**LEE LITIGATION GROUP, PLLC**
CK Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

AARON KING and ANDRIN JANQUENOUD,
*on behalf of themselves, FLSA Collective Plaintiffs*
*and the Class,*

     Plaintiffs,

    v.

PASSON & PASSON CORP.,
229 BLEECKER LLC
  d/b/a TERRA,
225 WEST BROADWAY CORP
  d/b/a ATTRAVERSA,
GOOD LUCK RIBBON CORP.
  d/b/a ARICCIA,
7 WASHINGTON LANE CORP.
  d/b/a ARIA HELL'S KITCHEN,
228 BLEECKER LLC
  d/b/a ARIA,
BRICIOLA CORP.
  d/b/a BRICIOLA,
230 BLEECKER CORP.
  d/b/a COTENNA,
62 CARMINE CORP.
  d/b/a CODINO,
329 BLEECKER CORP.
  d/b/a LABORATORIO,
ROBERTO PASSON, and TANYA HIRA-PASSON

     Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

Plaintiffs, AARON KING and ANDRIN JANQUENOUD (herein, "Plaintiffs"), on behalf

of themselves and others similarly situated, by and through their undersigned attorneys, hereby

file this Class and Collective Action Complaint against Defendants, PASSON & PASSON
CORP., 229 BLEECKER LLC d/b/a TERRA, 225 WEST BROADWAY CORP d/b/a
ATTRAVERSA, GOOD LUCK RIBBON CORP., d/b/a ARICCIA, 7 WASHINGTON LANE
CORP. d/b/a ARIA HELL'S KITCHEN, 228 BLEECKER LLC d/b/a ARIA, BRICIOLA CORP.
d/b/a BRICIOLA, 230 BLEECKER CORP. d/b/a COTENNA, 62 CARMINE CORP. d/b/a
CODINO, 329 BLEECKER CORP. d/b/a LABORATORIO (the "Corporate Defendants"),
ROBERTO PASSON, TANYA HIRA-PASSON ("Individual Defendants") (each individually,
"Defendant" or, collectively, "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§
201 *et. seq.* ("FLSA"), that they and similarly situated individuals are entitled to recover from
Defendants: (1) unpaid wages, (2) unpaid wages, including overtime, due to a policy of time-
shaving (3) unpaid wages, including overtime, due to an invalid tip credit, (4) unpaid wages due
to improperly deducted meal credits, (5) illegal retention of gratuities, (6) liquidated damages, and
(7) attorneys' fees and costs.

2.      Plaintiffs further alleges that, pursuant to the New York Labor Law ("NYLL"), they
and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, (2) unpaid
wages, including overtime, due to a policy of time-shaving (3) unpaid wages, including overtime,
due to an invalid tip credit, (4) unpaid wages due to improperly deducted meal credits, (5) unpaid
spread of hours premiums, (6) unpaid call-in pay premiums, (7) illegal retention of gratuities, (8)
statutory penalties, (9) liquidated damages, and (9) attorneys' fees and costs.

3.      Plaintiff KING further alleges that, pursuant to the New York State Human Rights
Law, New York Executive Law §296 ("NYSHRL"), and the New York City Human Rights Law,

Administrative Code of the City of New York § 8-107 ("NYCHRL"), that Plaintiff KING was deprived of his statutory rights as a result of Defendants' fostering a hostile work environment based on Plaintiff's sexual orientation and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

6.      Plaintiff, AARON KING, is a resident of New York County, New York.

7.       Plaintiff, ANDRIN JAQUENOUD, is a resident of Kings County, Brooklyn.

8.      Defendants ROBERTO PASSON, TANYA HIRA-PASSON, and PASSON & PASSON CORP., own and operate nine (9) restaurants at the following locations in New York City:

     a.  TERRA - 222 West Broadway, New York, New York 10007;

     b.  ATTRAVERSA – 225 West Broadway, New York New York 10013;

     c.  ARICCIA – 14 Bedford Street, New York, New York, 10014;

     d.  ARIA HELL'S KITCHEN – 369 West 51st Street, New York, New York 10019;

     e.  ARIA WEST VILLAGE – 117 Perry Street, Store #2, New York, New York 10014;

     f.  BRICIOLA – 370 West 51st Street, New York, New York 10019;

     g.  COTENNA – 21 Bedford Street, New York, New York 10014;

     h.  CODINO – 62 Carmine Street, New York, New York 10014; and

i.   LABORATORIO – 329 West 51st Street New York, New York 10019.

(Collectively the "Restaurants").

9.    Corporate Defendant PASSON & PASSON CORP. is a domestic limited liability company with a principal place of business and address of service of process located at 613 W 145th Street, New York, New York 10031. Corporate Defendant PASSON & PASSON CORP. owns and operates all other Corporate Defendants.

10.    Corporate Defendant 229 BLEECKER LLC d/b/a TERRA is a domestic limited liability company with a principal place of business located at 222 West Broadway, New York, New York 10007 and an address for service of process located at 408 W 145th Street, New York, New York 10031. Corporate Defendant 229 BLEECKER LLC d/b/a TERRA operates TERRA, located at 222 West Broadway, New York, New York 10007.

11.    Corporate Defendant 225 WEST BROADWAY CORP d/b/a ATTRAVERSA is a domestic limited liability company with a principal place of business and executive office located at 225 West Broadway, New York New York 10013. Defendant has an agent and an address for service of process located a c/o RESHMA HIRA 613 W 145th Street, New York, New York 10031. Corporate Defendant 225 WEST BROADWAY CORP d/b/a ATTRAVERSA operates ATTRAVERSA located at 225 West Broadway, New York New York 10013.

12.    Corporate Defendant GOOD LUCK RIBBON CORP. d/b/a ARICCIA is a domestic limited liability company with a principal place of business located at 14 Bedford Street, New York, New York 10007 and an address for service of process located at 613 W 145th Street, New York, New York 10031. Corporate Defendant GOOD LUCK RIBBON CORP. d/b/a ARICCIA operates ARICCIA located at 14 Bedford Street, New York, New York, 10014.

13.    Corporate Defendant 7 WASHINGTON LANE CORP. d/b/a ARIA HELL'S KITCHEN is a domestic limited liability company with a principal place of business located at 222 West Broadway, New York, New York 10007, and an executive office and address for service of process located at 408 W 145th Street, New York, New York 10031. Corporate Defendant 7 WASHINGTON LANE CORP. d/b/a ARIA HELL'S KITCHEN operates ARIA HELL'S KITCHEN located at 369 West 51st Street, New York, New York 10019.

14.    Corporate Defendant 228 BLEECKER LLC d/b/a ARIA is a domestic limited liability company with a principal place of business located at 117 Perry Street, New York, New York 10014 and an address for service of process located at 408 W 145th Street, New York, New York 10031. Corporate Defendant 228 BLEECKER LLC d/b/a ARIA operates ARIA WEST VILLAGE located at 117 Perry Street, Store #2, New York, New York 10014

15.    Corporate Defendant BRICIOLA CORP. d/b/a BRICIOLA is a domestic limited liability company with a principal place of business located at 370 West 51st Street, New York, New York 10019 and an address for service of process and executive office located at 408 W 145th Street, New York, New York 10031. Corporate Defendant BRICIOLA CORP. d/b/a BRICIOLA operates BRICIOLA located at 370 West 51st Street, New York, New York 10019.

16.    Corporate Defendant 230 BLEECKER CORP. d/b/a COTENNA is a domestic limited liability company with a principal place of business located at 21 Bedford Street, New York, New York 10014 and an address for service of process located at 400 West 56th Street, Suite 5H New York, New York 10019. Corporate Defendant 230 BLEECKER CORP. d/b/a COTENNA operates COTENNA located at 21 Bedford Street, New York, New York 10014.

17.    Corporate Defendant 62 CARMINE CORP. d/b/a CODINO is a domestic limited liability company with a principal place of business located at 62 Carmine Street, New York, New

York 10014 and an address for service of process located at 613 W 145th Street, New York, New York 10031. Corporate Defendant 62 CARMINE CORP. d/b/a CODINO operates CODINO located at 62 Carmine Street, New York, New York 10014.

18.    Corporate Defendant 329 BLEECKER CORP. d/b/a LABORATORIO is a domestic limited liability company with a principal place of business located at 329 West 51st Street New York, New York 10019 and an address for service of process located at 408 W 145th Street, New York, New York 10031.  Corporate Defendant 329 BLEECKER CORP. d/b/a LABORATORIO operates LABORATORIO located at 329 West 51st Street New York, New York 10019.

19.    Individual Defendant ROBERTO PASSON is an owner and principal of each of the Corporate Defendants. ROBERTO PASSON exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. ROBERTO PASSON exercised functional control over the business and financial operations of the Corporate Defendants. ROBERTO PASSON had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

20.    Individual Defendant TANYA HIRA-PASSON is an owner and principal of each of the Corporate Defendants. TANYA HIRA-PASSON exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. TANYA HIRA-PASSON exercised functional control over the business and financial operations of the Corporate Defendants. TANYA HIRA-PASSON had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

21.    Corporate Defendant PASSON & PASSON CORP., operates or operated the Restaurants as a single integrated enterprise, under the control of their owners, Individual Defendants ROBERTO PASSON and TANYA HIRA-PASSON. Individual Defendants ROBERTO PASSON and TANYA HIRA-PASSON, own and operate each Corporate Defendant. Specifically, Corporate Defendants are engaged in related activities, share common ownership and have a common business purpose:

    a.   Individual Defendants ROBERTO PASSON is a owner and Head Chef of Defendant PASSON & PASSON CORP and TANYA HIRA-PASSON is the Vice President of Defendant PASSON & PASSON CORP. *See* **Exhibit A, ¶¶** 29, 60; **Exhibit A**, pg. 48.

    b.   Individual Defendants ROBERTO PASSON and TANYA HIRA-PASSON are principals or owners of each Restaurant. *See* **Exhibit B; Exhibit C.**

    c.   Corporate Defendant PASSON & PASSON CORP., "is the owner and operator of a family of long-established and popular Italian restaurants and wine bars located in New York City offering cicchetti-style Italian food and select wine and beverage items. Plaintiff's family of restaurants include the following establishments: 1) Aria Wine Bar Hell's Kitchen ("Aria HK"), located at 369 West 51st Street, New York, NY 10019; 2) Aria Wine Bar West Village ("Aria WV"), located at 117 Perry Street, New York, NY 10014; 3) Briciola Wine Bar ("Briciola"), located at 370 West 51st Street, New York, NY 10019; 4) Codino Wine Bar ("Codino"), located at 62 Carmine Street, New York, NY 10014; 5) Cotenna Wine Bar ("Cotenna"), located at 21 Bedford Street, New York, NY 10014; and 6) Terra Wine Bar

("Terra"), located at 222 West Broadway, New York, NY 10013." *See* **Exhibit A** ¶ 5.

d. All the Restaurants "developed a distinctive atmosphere for its dine-in customers, which is implemented consistently in each of Plaintiff's Restaurants" which include "white 3 x 6 inch ceramic tiles ("Subway Tiles") for counter tops and counter side panels, table tops and portions of interior wall panel" … "which are emblematic of New York City" and "became a distinctive element of Plaintiff's Restaurant Concept and Trade Dress." *See* **Exhibit A** ¶ 13.

e. All the Restaurant's utilize "wooden tables, which provide a rustic counterpart to the modern Subway Tile countertops, tables and walls", juxtapose "communal counters and tables with smaller individual party tables" and "incorporate exposed brick walls throughout the interior" *See* **Exhibit A** ¶¶ 14-16

f. All of Restaurants utilize "ceiling height wooden shelving lined with upright wine bottles" and "unique wall décor installation, used to showcase hanging prosciutto" *See* **Exhibit A** ¶¶ 17-18.

g. All of Defendants Restaurants utilize a "distinctive Interior Décor for the bathrooms which is implemented consistently in all of Plaintiff's Restaurants" comprising of "white Subway Tile walls and wall panels, a red door, small hexagonal floor tiles, black wall paint and a red mechanical hand dryer." *See* **Exhibit A** ¶ 21.

h. Defendants utilize a "mix of plain white plates or bowls, white plates or bowls with a black rim, wooden boards, or earth colored clay dishes" to further accentuate the "urban yet rustic aesthetic" of Defendants' Restaurants. *See* **Exhibit A** ¶ 23.

i.   Defendants utilize "long bushels of branches that are wrapped with white Christmas tree lights, which, when lit, appear as long columns and beams of light" which "signals to patrons that the particular establishment belongs to Plaintiff's family of Plaintiff's Restaurants." *See* **Exhibit A** ¶ 25.

j.   Defendants utilize virtually identical menu offerings in all of their Restaurants, and the physical menu itself is virtually identical for each Defendants Restaurants. *See* **Exhibit A** ¶¶ 28; 30.

k.   Defendants' menus are "printed on off-white paper and [are] presented to dine-in restaurant patrons along with writing utensils. Patrons place their order by writing down or circling the items they would like to order directly on one of the paper menus and then handing the marked-up paper menu to their server. This style of ordering is unique amongst Italian restaurants and wine bars in the United States." *See* **Exhibit A** ¶ 32.

l.   Defendant ROBERTO PASSON has developed proprietary recipes which are offered at all of Defendants Restaurants, which include "Tortelloni d'Aragosta (lobster tortellini in a pink vodka sauce, which Plaintiff serves with asparagus spears); Fettuccini ai Funghi (fettuccini with wild mushrooms and truffle oil); Crostini Porchetta (toasted bread topped with suckling pig and salsa verde); Tortelli Prosciutto e Piselli (mini tortellini in white cream sauce with prosciutto and peas)." *See* **Exhibit A** ¶ 29.

22.   At all relevant times, Corporate Defendants, each were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the Regulations thereunder.

23.    At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

24.    Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt front-of-house and back-of-house employees (including delivery persons, servers, runners, bussers, porters, cooks, line-cooks, food preparers and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

25.    At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their (i) proper wages, (ii) their proper wages, including their overtime premium at one and a half times the regular rate for all hours worked over forty (40) in a workweek, due to a policy of time-shaving, and (iii) their proper wages due to improperly deducted meal credits. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs. A subclass of FLSA Collective Plaintiffs has a claim for (i) unpaid wages, including overtime, due to an invalid tip credit and (ii) illegally retained gratuities. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

26.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA

Collective Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ALLEGATIONS – NEW YORK**

27.   Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house and back-of-house employees (including delivery persons, servers, runners, bussers, porters, cooks, line-cooks, food preparers and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

28.   All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

29.   The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiffs are members of the Class and the Tipped Subclass

30.   Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of (i) failing to pay wages, (ii) failing to pay wages for all hours worked due to a policy

of time-shaving, (iii) improper meal credit deductions, (iv) unpaid call-in pay premiums, (v) unpaid spread of hours premium (vi) failing to provide proper wage statements to employees, and (vii) failing to provide proper wage notices to employees.

31.    With regard to the Tipped Subclass, Defendants also failed to pay the proper minimum wage because Defendants were not entitled to claim any tip credit as they failed to meet the statutory requirements under the NYLL. Plaintiffs and the other members of the Tipped Subclass suffered from Defendants' utilization of an invalid tip credit because Defendants: (i) failed to properly provide written tip credit notice at hiring; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked during a given shift each workweek; (iii) implemented an invalid tip pooling scheme whereby managers and non-tipped employees participated; (iv) illegally retained tips; (v) failed to accurately keep track of daily tips earned and maintain records thereof; and (vi) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period.

32.    Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

33.    Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

34.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

35.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide

class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

36.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.     Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b.     What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class members;

c.     At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and the Class members for their work;

d.     Whether Defendants properly notified Plaintiffs and the Class members of their hourly rates and overtime rates;

e.     Whether Defendants paid Plaintiffs and Class members the proper compensation for all hours worked under the New York Labor Law;

f.     Whether Defendants operated their business with a policy of not compensating employees for all hours worked due to time-shaving;

g.     Whether Defendants properly provided written notice to all tipped employees, in their native language, that Defendants were taking a tip credit;

h.     Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

i.     Whether Defendants instituted an improper tip pool whereby managers and non-tipped employees participated;

j.   Whether Defendants illegally retained gratuities to pay other employees;

k.   Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or two hours of their work shift;

l.   Whether Defendants properly satisfied New York State's nutritional requirements containing all four (4) food groups for meals provided to employees;

m.   Whether the meals provided by Defendants exceed the meals "reasonable cost";

n.   Whether employees actually consumed the credited meals provided by Defendants;

o.   Whether Defendants properly compensated Plaintiffs and Class members with their call-in premiums;

p.   Whether Defendants paid Plaintiff and Class members the New York State spread of hours premium when their workdays exceeded ten (10) hours;

q.   Whether Defendants provided proper wage statements informing: (i) tipped employees of the amount of tip credit allowance for each payment period; and (ii) all non-exempt employees of information required to be provided on wage statements as required under the NYLL and applicable state laws;

r.   Whether Defendants provided proper wage and hour notice, at date of hiring and with each change in pay rate thereafter, to all non-exempt employees, in their native language, per requirements of the NYLL.

## **STATEMENT OF FACTS**

*Plaintiff ANDRIN JAQEUNOUD*

37.   In or around November 2016, Plaintiff ANDRIN JAQEUNOUD was hired by Defendants to work as a server and bartender for Defendants at their ARIA HELL's KITCHEN restaurant location. In or around 2018, Plaintiff was transferred to Defendants CODINO restaurant.

However, Plaintiff was frequently required to assist at all of Defendants Restaurants on an as needed basis. Plaintiff was employed by Defendants until in or around July 2019.

38.    Throughout his employment, Plaintiff work five (5) days per week. Plaintiff usually worked two double shifts, from 10:00 a.m. to closing, which could be anywhere from 12:00 a.m. to 2:00 a.m. Plaintiff then worked three (3) single shifts, from 4:00 p.m. to closing, which could be anywhere from 12:00 a.m. to 2:00 a.m.

39.    From the start of his employment to in or around January 2018, Plaintiff was compensated solely with tips. Starting in January 2018, to the end of his employment, Plaintiff was compensated at the tip credit minimum wage.

40.    Throughout his employment, when working single shifts, Plaintiff JAQUENOUD was required to clock out for a thirty (30) minute meal breaks. However, Plaintiff was occasionally too busy to clock out for his break, and Defendants would automatically deduct thirty (30) minutes from his hours worked. When working double shifts, Plaintiff JAQUENOUD was required to clock out for two (2) thirty (30) minute meal breaks. Plaintiff JAQUENOUD, when working double shifts, would only be able to clock out for one of his thirty (30) minute meal breaks, and Defendants would automatically deduct the second thirty (30) minute break from Plaintiff's wages. FLSA Collective Plaintiffs and Class Members would similarly be required to clock out for their meal breaks but be required to continue working through them.

41.    Throughout his employment, Plaintiff JAQUENOUD regularly worked days exceeding ten (10) hours in length, but Defendants failed to provide Plaintiff with his spread-of-hours premium for the workdays that exceeded ten (10) hours in length. Class Members similarly failed to receive their spread of hours premiums when working shifts that exceeded ten (10) hours in length.

42.    Throughout Plaintiff JAQUENOUD's employment, Defendants improperly deducted a meal credit from Plaintiff's wages under FLSA § 203(m) and NYCRR § 146-1.9, without regard to whether the meal credit deducted exceed the meals "reasonable cost"[1], whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups[2], and whether employees actually consumed the credited meals or not. FLSA Collective Plaintiffs and Class Members similarly had meal credits improperly deducted from their wages.

43.    Throughout his employment Defendants would require employees to clock out at 10:00 p.m., or Defendants would clock out employees themselves if the employees failed to clock out, even if employees were required to continue working until closing time. FLSA Collective Plaintiffs and Class Members would similarly be required to clock at or around 10:00 p.m. but be required to continue working until closing, which could be anywhere from 12:00 a.m. to 2:00 a.m.

44.    Throughout his employment, Plaintiff JAQUENOUD would occasionally be sent home despite showing up for his scheduled shift, but Defendants would not provide Plaintiff with his call-in pay premiums. Class Members would similarly be sent home from their scheduled shifts and not be provided their call-in pay premiums.

45.    Throughout Plaintiff JAQUENOUD's employment, Defendants retained forty (40%) percent of all tips to pay the kitchen staff. At some point the tip retention was reduced to thirty (30%) percent, and later fifteen (15%) percent. The subclass of FLSA Collective Plaintiffs and the Tipped Subclass similarly suffered from Defendants illegal retention of tips. This tip retention occurred at all of the Restaurants.

_____

[1] 29 C.F.R. § 531.3
[2] NYCRR § 146-3.7

46.    Throughout Plaintiff JAQUENOUD's employment, Defendants required Plaintiff to pay bussers that assisted him twenty ($20) to thirty ($30) dollars out-of-pocket per shift. The subclass of FLSA Collective Plaintiffs and the Tipped Subclass similarly suffered from Defendants requiring tipped employees to pay bussers out-of-pocket.

47.    Throughout his employment, Plaintiff and Class members did not receive wage statements that were in compliance with the NYLL. Defendants failed to satisfy the requirements under the NYLL because they failed to provide proper wage statements due to an invalid tip credit, unpaid wages, including overtime, due to time shaving, and invalid meal credit deductions for each payment period. In other words, Plaintiff and Class members did not receive proper wage statements, as their statements failed to accurately reflect the number of hours worked and their proper compensation.

48.    Defendants failed to provide Plaintiff and the Class members with proper wage notices at hiring and at all changes of payrate thereafter. Plaintiff did not receive proper wage notices either upon being hired or upon every change of pay rate in violation of the NYLL.

*Plaintiff AARON KING's Wage and Hour Claims*

49.    In or around June 2016, Plaintiff KING was hired by Defendants to work as a bartender. At the start of his employment, Plaintiff trained at TERRA for the first month of his employment. After the first month of training, Plaintiff was transferred to ARIA's HELL'S KITCHEN, where he primarily worked until the restaurant closed in or around March 2020 due to COVID-19. Throughout his employment, Plaintiff was transferred to ARIA'S WEST VILLAGE to cover shifts on an as needed basis.

50.    From the start of his employment until January 2020, Plaintiff worked seven (7) days a week from 12:00 p.m. to closing, which could be anywhere from 12:00 a.m. to 2:00 a.m. In n or

around January 2020 to the end of his employment, after Plaintiff complained about his sexual harassment, Defendants reduced Plaintiff's schedule to one shift per week, from 4:00 p.m. to closing, which could be anywhere from 12:00 a.m. to 2:00 a.m.

51. Throughout his employment, Plaintiff KING was compensated at the tip credit minimum wage rate.

52. Throughout his employment, Plaintiff KING was required to clock out for a thirty (30) minute meal breaks. However, Plaintiff was usually too busy to clock out for his break and would have to work through his break. If Plaintiff failed to clock out for his meal break, Defendants would automatically deduct thirty (30) minutes from his hours worked. If working a double shift, Plaintiff was required to clock out for two (2) thirty (30) minute meal breaks. Plaintiff, when working double shifts, would only be able to clock out for one of his thirty (30) minute meal breaks, and Defendants would automatically deduct the second thirty (30) minute break from Plaintiff's wages. FLSA Collective Plaintiffs and Class Members would similarly be required to clock out for their meal breaks but be required to continue working through them.

53. Throughout his employment Defendants would require employees to clock out at 10:00 p.m., or Defendants would clock out employees themselves if the employees failed to clock out, even if employees were required to continue working until closing time. FLSA Collective Plaintiffs and Class Members would similarly be required to clock at or around 10:00 p.m. but be required to continue working until closing, which could be anywhere from 12:00 a.m. to 2:00 a.m.

54. Throughout his employment, Plaintiff KING would occasionally be sent home despite showing up for his scheduled shift, but Defendants would not provide Plaintiff with his call-in pay premiums. Class Members would similarly be sent home from their scheduled shifts and not be provided their call-in pay premiums.

55.     Throughout his employment, Plaintiff KING regularly worked days exceeding ten (10) hours in length, but Defendants unlawfully failed to provide Plaintiff with his spread-of-hours premium for workdays that exceeded ten (10) hours in length. Class Members similarly failed to receive their spread of hours premiums when working shifts that exceeded ten (10) hours in length.

56.     Throughout Plaintiff KING's employment, Defendants improperly deducted a meal credit from Plaintiff's wages under FLSA § 203(m) and NYCRR § 146-1.9, without regard to whether the meal credit deducted exceed the meals "reasonable cost"[3], whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups[4], and whether employees actually consumed the credited meals or not. FLSA Collective Plaintiffs and Class Members similarly had meal credits improperly deducted from their wages.

57.     Throughout Plaintiff KING's employment, Defendants retained forty (40%) percent of all tips to pay the kitchen staff. At some point the tip retention was reduced to thirty (30%) percent, and later fifteen (15%) percent. The subclass of FLSA Collective Plaintiffs and the Tipped Subclass similarly suffered from Defendants illegal retention of tips. This tip retention occurred at all of the Restaurants.

58.     Throughout Plaintiff KING's employment, Defendants required Plaintiff to pay bussers that assisted him twenty ($20) to thirty ($30) dollars out-of-pocket per shift. The subclass of FLSA Collective Plaintiffs and the Tipped Subclass similarly suffered from Defendants requiring tipped employees to pay bussers out-of-pocket.

59.     Throughout his employment, Plaintiff and Class members did not receive wage statements that were in compliance with the NYLL. Defendants failed to satisfy the requirements

---

[3] 29 C.F.R. § 531.3
[4] NYCRR § 146-3.7

under the NYLL because they failed to provide proper wage statements due to an invalid tip credit, unpaid wages, including overtime, due to time shaving, and invalid meal credit deductions for each payment period. In other words, Plaintiff and Class members did not receive proper wage statements, as their statements failed to accurately reflect the number of hours worked and their proper compensation.

60.    Defendants failed to provide Plaintiff and the Class members with proper wage notices at hiring and at all changes of payrate thereafter. Plaintiff did not receive proper wage notices upon being hired or upon every change of pay rate in violation of the NYLL.

*                                              *                                              *

61.    Plaintiffs, a subcollective of FLSA Collective Plaintiffs, and Tipped Class members were not paid all of their wages or their overtime premiums, at a rate of time and one half of the regular hourly rate, for all hours worked.

62.    Plaintiffs, FLSA Collective Plaintiffs, and Class members were not paid all wages or their overtime premium, at a rate of time and one half of the regular hourly rate, for all hours worked due to Defendants' policy of time-shaving .

63.    Plaintiffs, the subclass of FLSA Collective Plaintiffs, and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiffs, the subclass of FLSA Collective Plaintiffs and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the FLSA and NYLL because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties in excess of two hours or 20% of the total hours worked each shift; (iii) implemented an invalid tip pooling scheme in wherein Defendants retained a significant portion of the tips; (iv) illegally retained

gratuities, (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

64.    Specifically, Plaintiffs, the subclass of FLSA Collective Plaintiffs, and the Tipped Subclass were required to engage more than two hours or 20% of their working time performing non-tipped related activities such as preparing silverware rollups, polishing glasses and silverware, cutting bread, vegetables, and fruits, cleaning the bathroom, sweeping and mopping the floors, clean the fridges, dust off bottles, cleaning and mopping floors, sweeping the sidewalks, organizing the furniture, organizing plates and silverware, among other duties. Even though Defendants required Plaintiff, the subclass of FLSA Collective Plaintiffs and the Tipped Subclass employees to engage in non-tipped activities in excess of two hours or 20% of the total hours worked each shift, Defendants improperly claimed tip credit for all hours worked by tipped employees.

65.    Throughout their employment, Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass were subject to an illegal retention of gratuities wherein Defendants retained upwards of forty (40%) percent of all the tips to allegedly "pay the kitchen staff".

66.    Plaintiffs and Class members regularly worked days exceeding ten (10) hours in length, but Defendants unlawfully failed to pay Plaintiff and Class members their spread-of-hours premium for workdays that exceeded ten (10) hours in length.

67.    Defendants improperly deducted a meal credit from Plaintiffs' wages under FLSA § 203(m) and NYCRR § 146-1.9, without regard to whether the meal credit deducted exceed the meals "reasonable cost"[5], whether the meals provided satisfied New York State's nutritional

---

[5] 29 C.F.R. § 531.3

requirements containing all four (4) food groups[6] , and whether employees actually consumed the credited meals or not

68.     Defendants failed to properly provide call-in pay premiums when Defendants sent Plaintiffs and Class Members home when they were scheduled to work a shift, in violation of the New York Labor Law.

69.     Defendants failed to properly provide Plaintiffs and the Class members with proper wage notices in statutory compliance with the New York Labor Law.

70.     Defendants failed to properly provide Plaintiffs and the Class members with proper wage statements in statutory compliance with the New York Labor Law.

71.     Defendants knowingly and willfully operated their business with a policy of not paying for all hours worked, and the proper overtime rate thereof for all hours worked to Plaintiff, FLSA Collective Plaintiffs, and Class members in violation of the FLSA.

72.     Defendants knowingly and willfully operated their business with a policy of not paying the New York State minimum wage, and the proper overtime rate thereof for all hours worked to Plaintiff, FLSA Collective Plaintiffs, and Class members, due to a policy of time-shaving, in violation of the FLSA and the NYLL.

73.     Defendants knowingly and willfully operated their business with a policy of not paying the New York State minimum wage, and the proper overtime rate thereof for all hours worked to Plaintiff, FLSA Collective Plaintiffs, and Class member, due to an invalid tip credit, in violation of the FLSA and the NYLL.

74.     Defendants knowingly and willfully operated their business with a policy of not paying spread-of-hours premium to Plaintiff and Class members, in violation of the NYLL.

_____

[6] NYCRR § 146-3.7

75.    Defendants knowingly and willfully operated their business with a policy of not paying call-in pay premiums to Plaintiff and Class members, in violation of the NYLL.

76.    Defendants knowingly and willfully claimed an unlawful meal credit from Plaintiffs' and Class Members' wages, in violation of the NYLL

77.    Defendants knowingly and willfully operated their business without providing proper wage notices in violation of the NYLL.

78.    Defendants knowingly and willfully operated their business without providing proper wage statements in violation of the NYLL.

*Plaintiff AARON KING's DISCRIMINATION CLAIMS*

79.    In addition to the above, Plaintiff KING and other LGBTQ employees suffered from Defendants' discriminatory practices and the hostile work environment fostered by Defendants, as described below.

80.    Plaintiff KING is a homosexual male.

81.    Starting in or around 2017, the Chef Avencio [Last Name Unknown] created and fostered a hostile work environment when he started sexually harassing Plaintiff. This hostile work environment would continue on to impact all LGBTQ employees.

82.    Chef Avencio would rub his penis in front of Plaintiff KING and ask Plaintiff "can you suck my dick?" Chef Avencio would also rub his penis on Plaintiff KING's butt and back whenever Plaintiff attempted to pass by him.

83.    Chef Avencio would constantly verbally abuse Plaintiff by calling him "faggot" or "puto" (a derogatory Spanish term for homosexuals).

84.     As a result of Chef Avencio's hostile work environment, other kitchen staff employees were empowered to continue the hostile work environment by verbally abusing Plaintiff KING, calling him "Faggot" or "puto"

85.     Plaintiff KING complained to management about Chef Avencio's offensive and discriminatory conduct and was told that they would "look into it." However, nothing was ever done to Chef Avencio and the harassment continued.

86.     Eventually Chef Avencio transferred to a different restaurant owned by Defendants, but would continue to fill in at ARIA's HELL'S KITCHEN, on an as needed basis, and would continuously harass Plaintiff.

87.     Defendants have a cruel and biased practice of fostering a hostile work environment and verbally abusing members of the LGBTQ community. Because of this biased practice, Plaintiff KING suffered physical discomfort and emotional humiliation while working for Defendants.

88.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

89.     Plaintiffs realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

90.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

91.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

92.     At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

93.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiffs and FLSA Collective Plaintiffs their wages, including overtime.

94.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiffs and FLSA Collective Plaintiffs their wages, including overtime, due to timeshaving.

95.     At all relevant times, Defendants had a policy and practice that failed to pay proper wages to Plaintiffs and a subclass of FLSA Collective Plaintiffs, due to an invalid tip credit.

96.     At all relevant times, Defendants had a policy and practice that illegally retained gratuities from Plaintiffs and a subclass of FLSA Collective Plaintiffs.

97.     At all relevant times, Defendants had a policy and practice of improperly deducting meal credits from Plaintiffs and FLSA Collective Plaintiffs regardless of whether the meal credit deducted exceed the meals "reasonable cost", whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups, and whether Plaintiff and FLSA Collective Plaintiffs consumed the meals in question.

98.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

99.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA

as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs their proper wages, including their proper overtime premium, when Defendants knew or should have known such was due.

100.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

101.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

102.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, unpaid wages and overtime due to timeshaving, unpaid wages and overtime due to an invalid tip credit, illegally retained gratuities, and unpaid wages due to improperly deducted meal credits, plus an equal amount as liquidated damages.

103.    Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

104.    Plaintiffs realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

105.    At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

106.   At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiffs and Class Members their proper wages, including overtime, in direct violation of the NYLL

107.   At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiffs and Class Members their proper wages, including overtime, due to timeshaving, in direct violation of the NYLL.

108.   At all relevant times, Defendants engaged in a policy and practice of refusing to pay Plaintiffs and Tipped Subclass members the proper minimum wage and overtime due to an invalid tip credit in direct violation of the NYLL.

109.   Defendants willfully violated the rights of Plaintiffs and Tipped Subclass members by illegally retaining gratuities, in direct violation of the NYLL.

110.   Defendants failed to properly notify Plaintiffs and the Tipped Subclass of their tips and tip pooling policies, in direct violation of the NYLL.

111.   Defendants failed to compensate Plaintiffs and Class Members with their spread of hours premiums when working shifts in excess of ten (10) hours per day, in direct violation of the NYLL.

112.   Defendants failed to compensate Plaintiffs and Class Members with their call-in pay premiums, in direct violation of the NYLL.

113.   Defendants willfully violated Plaintiffs' and Class members' rights by improperly deducting meal credits from Plaintiffs and Class members regardless of whether the meal credit deducted exceed the meals "reasonable cost", whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups, and whether Plaintiffs and Class members consumed the meals in question.

114.   Defendants failed to properly notify employees of their overtime rate, in direct violation of the New York Labor Law.

115.   Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the New York Labor Law.

116.   Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under the New York Labor Law.

117.   Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants unpaid wages, unpaid wages due to timeshaving, unpaid wages due to an invalid tip credit, unpaid spread of hours premium, unpaid call-in pay premiums, unpaid wages due to improperly deducted meal credits, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

**COUNT III**

**VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**

118.   Plaintiff KING realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

119.   The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of sexual orientation.

120.   Plaintiff KING was an employee and qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

121.   Defendants operated a business that discriminated against Plaintiff KING in violation of Section 296(1)(a) with respect to the terms, conditions, and privileges of his employment because of his sexual orientation in ways including, but not limited to:

    a.   Creating and fostering a hostile work environment based on Plaintiff's sexual orientation; and

    b.   Verbally abusing Plaintiff with homophobic slurs;

122.   Defendants conduct was intentional, malicious, and in reckless disregard of Plaintiff KING's protected rights under Section 296 of the NYSHRL.

123.   As a result of Defendants' unlawful discriminatory practices, Plaintiff KING sustained injury, including economic damages and past and future physical and emotional distress.

124.   Due to Defendants' violations under the NYSHRL, based on discrimination on the basis of sexual orientation, Plaintiff KING is entitled to recover from Defendants: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorney's fees and costs.

125.   Additionally, Defendants violated the NYSHRL by creating and maintaining a hostile work environment. This hostile work environment was created and fostered through pervasive and regular harassment in the form of comments and behavior directed towards Plaintiff KING.

126.   The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff KING's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff, which led to his constructive termination.

127.   As a direct and proximate result of said hostile work environment, Plaintiff KING suffered and continues to suffer actual damages in various ways, including but without limitation, loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment

in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYSHRL.

COUNT IV

<u>VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW,</u>

<u>ADMINISTRATIVE CODE OF THE CITY OF NEW YORK § 8-107 ("NYCHRL")</u>

128.  Plaintiff KING realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

129.  At all relevant times, Plaintiff KING was an employee within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

130.  Defendants operated a business that discriminated against Plaintiff KING in violation of the NYCHRL by discriminating against Plaintiff with respect to the terms, conditions, and privileges of his employment because of his sexual orientation in various ways, including but not limited to:

      a.  Creating and fostering a hostile work environment based on Plaintiff's sexual orientation; and

      b.  Verbally abusing Plaintiff with homophobic slurs;

131.  Defendants conduct was intentional, malicious, and in reckless disregard of Plaintiff KING's protected rights under the NYCHRL.

132.  As a result of Defendants' unlawful discriminatory practices, Plaintiff KING sustained injury, including economic damages and past and future physical and emotional distress.

133.  Due to Defendants' violations under the NYCHRL, based on discrimination on the basis of sexual orientation, Plaintiff KING is entitled to recover from Defendants: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorney's fees and costs.

134.   Additionally, Defendants violated the NYCHRL by creating and maintaining a hostile work environment. This hostile work environment was created and fostered through pervasive and regular discrimination in the form of comments and behavior directed towards Plaintiff KING.

135.   The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff KING's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff, which lead to constructive termination.

136.   As a direct and proximate result of said hostile work environment, Plaintiff KING suffered and continues to suffer actual damages in various ways, including but without limitation, loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYCHRL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the NYSHRL, and the NYCHRL;

b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.   An award of unpaid wages, including overtime, due to timeshaving due under the FLSA and the New York Labor Law;

d.   Am award of unpaid wages, including overtime, due to an invalid tip credit due under the FLSA and the New York Labor Law;

e.   An award of gratuities illegally retained by Defendants, due under the FLSA and New York Labor Law;

f.   An award of unpaid wages due to improperly deducted meal credits, due under the FLSA and the New York Labor Law;

g.   An award of unpaid spread of hours premium due under the New York Labor Law;

h.   An award of call-in pay premiums due under the New York Labor Law;

i.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

j.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, minimum wages, and "spread of hours" premium pursuant to the New York Labor Law;

k.   An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

l.   An award of backpay, compensatory damages, and punitive damages due under the NYSHRL;

m.   An award of backpay, compensatory damages, and punitive damages due under the NYCHRL;

n.   Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

o.   Designation of this action as a class action pursuant to F.R.C.P. 23;

p.   Designation of Plaintiffs as Representatives of the Class; and

q.  Such other and further relief as this Court deems just and proper.

## **<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: July 15, 2022

                                        Respectfully submitted,

By:    */s/ C.K. Lee*
             C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Second Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*